**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Katherine GRAHAM, Defendant–Appellant.**

**No. 92–2234.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1992.

Decided Dec. 14, 1992.

Philip S. Greene, Houston, TX, argued for defendant-appellant.

Kevin T. Alexander, Asst. U.S. Atty., Little Rock, AR, argued for plaintiff-appellee.

Before RICHARD S. ARNOLD, Chief Judge, LOKEN, Circuit Judge, and ROSENBAUM, District Judge.[*]

PER CURIAM.

Katherine Graham appeals her conviction for possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). She argues that the district court[1] erred in denying her motion to suppress the cocaine and other evidence uncovered when she and her luggage were detained and

---

[*] The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

[1] The HONORABLE GEORGE HOWARD, JR., United States District Judge for the Eastern District of Arkansas.

searched during a refueling stop on a bus trip. We affirm.

On September 4, 1991, a bus travelling from Dallas, Texas, to Memphis, Tennessee, stopped in Little Rock, Arkansas. While most of the passengers, including Graham, were in the bus depot for a short break, Little Rock police officers took their certified narcotics dog, Jupp, on the bus. Near the center of the bus, Jupp began to "air scent," an indication that he smelled narcotics in a higher location. The officers then removed several pieces of luggage from the overhead storage rack, and Jupp alerted to a navy blue suitcase with a tag identifying the owner as "Katherine Graham."

After the passengers reboarded, the officers identified themselves and asked each passenger to produce a ticket and personal identification. Graham, who was sitting near the navy blue suitcase to which Jupp had alerted, showed the officers her ticket but said her name was "Jones" and denied having any identification. The officers asked if she had any luggage, and Graham identified two pieces, including the navy blue suitcase. Graham refused the officers' request to search her luggage. She was then asked to accompany the officers off the bus, where they gave her *Miranda* warnings, advised her of Jupp's positive alert to her suitcase, and told her that she would be detained until they could apply for a search warrant. After obtaining a warrant, the officers discovered just over five kilograms of cocaine in the navy blue suitcase.

■ On appeal, Graham first argues that the officers violated her Fourth Amendment rights as defined in *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), when they moved her navy blue suitcase from the overhead luggage rack to the aisle of the bus for a dog sniff. This contention is foreclosed by *United States v. Harvey*, 961 F.2d 1361, 1363 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992), where we held that

the temporary moving of unattended luggage from one public area of a bus to another to facilitate a dog sniff is not a seizure for Fourth Amendment purposes. Graham asks us to reconsider *Harvey*, but as a panel we may not do so.

Graham next argues that the officers coercively questioned her on the bus, and that, as a result, her admission that she owned the navy blue suitcase was not consensual. The district court held that the officers' questioning was consensual until Graham admitted ownership of the suitcase, at which point the officers had reasonable suspicion to detain Graham and the suitcase based upon Jupp's alert. We review the district court's finding of consent under the clearly erroneous standard. *See United States v. McKines*, 933 F.2d 1412, 1425 (8th Cir.) (en banc), *cert. denied,* — U.S. —, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

In *Florida v. Bostick*, — U.S. —, —, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991), the Supreme Court held that, because passengers on a bus have voluntarily placed themselves in a restricted area that they do not wish to leave, the consent issue turns upon "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." Graham argues that her consent was involuntary because the questioning officer weighed 375 pounds and blocked the entire bus aisle, because the officer did not state his purpose in questioning, and because he persisted in questioning Graham even after she signaled her desire to terminate the encounter by refusing to identify herself.

■ In this case, unlike *Bostick*, the officers were not randomly questioning a busload of passengers. Based upon Jupp's alert to the navy blue suitcase, the officers had reasonable suspicion to detain that bag,[2] and it was proper for them to question the passengers to see if the owner of the suspicious suitcase could be located. In *Harvey*, the officers asked the passengers as a group who owned the suspect

---

**2.** Indeed, Graham does not appeal the district court's upholding of the subsequent search of

the suitcase pursuant to a warrant.

bags. Here, they asked each passenger individually. Graham was entitled to refuse to answer their questions, but she did not do so. Rather, she answered some questions, including the crucial request to identify her luggage; she dodged questions about her identity; and she refused the officers' request to search her luggage. This behavior is not reflective of an overborne will. Applying the *Bostick* standard for onboard questioning of bus passengers, we conclude that the district court's finding that Graham responded to the officers' questions during a consensual encounter is not clearly erroneous.

Accordingly, Graham's motion to suppress was properly denied, and the judgment of the district court is affirmed.